UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

IN RE JOHNS-MANVILLE CORPORATION, ET
AL.,

                                Debtors.

THE TRAVELERS INDEMNITY COMPANY AND
TRAVELERS CASUALTY AND SURETY
COMPANY (F/K/A AETNA CASUALTY AND
SURETY COMPANY),

                              Appellants,

                   - against -

STATUTORY AND HAWAII DIRECT ACTION
SETTLEMENT COUNSEL AND COMMON LAW
SETTLEMENT COUNSEL,

                              Appellees.

─────────────────────────────────────

11 Civ. 1312 (JGK)
11 Civ. 1329 (JGK)

OPINION AND ORDER

      The appellants, Travelers Indemnity Company and Travelers Casualty and Surety Company ("Travelers"), appeal from a final judgment of the United States Bankruptcy Court for the Southern District of New York (Lifland, J.), dated January 20, 2011, requiring Travelers to pay over $500 million to certain asbestos plaintiffs that had filed direct actions against Travelers. The Judgment sought to enforce three settlement agreements that were executed by the parties in 2004. Because a condition precedent in the settlement agreements was not satisfied, it was error to require Travelers to make the settlement payments. To that extent, therefore, the judgment must be reversed.

1

**I.**

This appeal is the latest chapter in a long-running litigation involving Johns-Manville Corporation ("Manville"), Travelers, and asbestos claimants. The history of that litigation is recounted here only to the extent necessary to understand the current appeal.

**A.**

From the 1920s until the 1970s, Manville was the largest manufacturer of asbestos-containing products and the largest supplier of raw asbestos in the United States. In re Johns-Manville Corp. ("Manville I"), Nos. 82 B 11656, 82 B 11657, 82 B 11660, 82 B 11661, 82 B 11665, 82 B 11673, 82 B 11675, 82 B 11676, 2004 WL 1876046, *2, ¶ 1 (Bankr. S.D.N.Y. Aug. 17, 2004). Travelers was Manville's primary insurer from 1947 through 1976, providing comprehensive general liability coverage and other insurance policies. Id. at *5, ¶ 12. In 1982, faced with overwhelming litigation stemming from the health problems associated with asbestos, Manville filed a voluntary petition for reorganization under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 et seq. In re Johns-Manville Corp. ("Manville II"), 340 B.R. 49, 54 (S.D.N.Y. 2006). Soon after Manville filed for bankruptcy, Travelers and other

Manville insurers became enmeshed in so-called "direct action" suits by asbestos plaintiffs, which sought to recover directly against insurers based on those insurers' relationships with Manville ("Direct Action Suits"). Id. at 55. There were also a series of contribution claims, cross claims, and indemnity claims between and among many of the companies that had insured Manville over the years. Id. Travelers and other insurers were also embroiled in a contentious coverage dispute with Manville. Id.

Ultimately, Travelers and other insurers entered into a settlement agreement with Manville. Pursuant to this agreement, Travelers agreed to contribute nearly $80 million to the bankruptcy estate in exchange for a complete release for Travelers of liabilities that were related to or based on Manville and an injunction that channeled all claims related to policy claims to the Manville Personal Injury Settlement Trust ("Manville Trust"). Manville I, 2004 WL 1876046, at *15, ¶¶ 58, 61. After considering objections to this settlement and holding a series of hearings, the Bankruptcy Court approved the agreement and entered two orders intended "to fully and finally extricate Travelers from the Manville morass" ("the 1986

Orders"). [1]  Id. at *15, ¶ 60.  These two orders — the "Insurance
Settlement Order" and the "Confirmation Order" — enjoined "all
persons" from commencing any action against any of the settling
insurance companies for any and all claims based upon, arising
out of, or relating to these insurers' policies with Manville,
and released the settling insurers from any such claims.  Id. at
*15, ¶¶ 61-64.  The Insurance Settlement Order also channeled
all litigation by potential claimants to the Manville Trust.
Id. at *15, ¶ 61.  As this Court explained, with the entry of
the 1986 Orders, "Travelers thought it had secured finality and
a full and complete release of liabilities related to Manville."
Manville II, 340 B.R. at 55.

     Nonetheless, even after the 1986 Orders, various groups of
plaintiffs filed asbestos actions against Travelers in several
states.  Manville I, 2004 WL 1876046, at *17, ¶ 70.  These
lawsuits fell within two broad categories.  The Statutory Direct
Action Plaintiffs alleged that Travelers conspired to violate
state laws prohibiting unfair insurance trade practices, and
that Travelers coordinated Manville's national defense effort
against asbestos litigation, including the allegedly fraudulent

---

[1] The 1986 Orders were affirmed by both the District Court, In re
Johns-Manville Corp., 78 B.R. 407 (S.D.N.Y. 1987), and the Court
of Appeals for the Second Circuit, MacArthur Co. v. Johns-
Manville Corp., 837 F.2d 89, 90 (2d Cir. 1998); Kane v. Johns-
Manville Corp., 843 F.2d 636, 640-41 (2d Cir. 1988).

perpetuation of the "state of the art" defense.[2]  <u>Id.</u> at *18-19,
¶¶ 73-74, 78-79.  The Common Law Direct Action Plaintiffs
claimed that Travelers violated certain common law duties to
them when it failed to disclose what it had learned about
asbestos hazards from Manville, and that Travelers conspired
with Manville and other insurers to suppress such knowledge.
<u>Id.</u> at *19, ¶¶ 80-82.

On June 19, 2002, Travelers moved the Bankruptcy Court to
enjoin these suits pursuant to the 1986 Orders.  <u>Manville II</u>,
340 B.R. at 55.  The Bankruptcy Court issued a temporary
restraining order prohibiting further prosecution of certain
lawsuits against Travelers, and this order was subsequently
extended in scope and duration.  <u>Id.</u>  The Bankruptcy Court
referred the matter to mediation and appointed the Honorable
Mario M. Cuomo, former Governor of the State of New York, as
mediator.  <u>Id.</u>

**B.**

In 2003 and 2004, Travelers entered into three settlement
agreements pursuant to which it agreed to pay $360 million to

---

[2] The Hawaii Direct Action Plaintiffs are a subset of the
Statutory Direct Action Plaintiffs.  Their claims are predicated
on Hawaii State Consumer Statutes.  The two groups filed a joint
brief in this appeal.

the Statutory Direct Action Plaintiffs, $70 million to the Common Law Direct Action Plaintiffs, and $15 million to the Hawaii Direct Action Plaintiffs ("the Settlement Agreements").[3] Manville I, 2004 WL 1876046, at *22-23, ¶¶ 96, 101, 105.  The Settlement Agreements provided that Travelers would make payments into funds designed to pay direct action claimants, who would be required to sign a general release of claims against Travelers to gain access to the appropriate fund.  Id. at *22-23, ¶¶ 98-99, 102, 105.

The Settlement Agreements were each contingent upon the satisfaction of several conditions precedent.  The two conditions precedent disputed on this appeal are as follows. First, the Settlement Agreements required entry by the Bankruptcy Court of a Settlement Approval Order and a Clarifying Order "containing prohibitions against Claims at least as broad as those contained in Exhibit A[,]" which Orders were required to "become a Final Order(s)."[4]  (R. 4 Ex. 1 at § 2(a); R. 4 Ex. 2 at § 2(b)(d); R. 4 Ex. 3 at § 2(a).)[5]  Exhibit A consisted of a

---

[3] Each of the Settlement Agreements was executed in 2004.

[4] The language in the Common Law Direct Action Settlement Agreement differs slightly but not in any material respect. (R. 4 Ex. 3 at § 2(a).)

[5] All citations to the record refer to the appendix of items designated by Travelers to be included in the record on appeal. (Appendix to Travelers' Counter Designation of Bankruptcy Record

proposed order stating, among other provisions, that all claims against Travelers "of any kind or nature whatsoever" "arising from or relating to" Travelers' handling of asbestos claims, as well as "any claims for contribution or indemnity relating in any way" to the same, "are covered by the Confirmation Order and permanently enjoined as against Travelers, which were released therefrom under the Confirmation Order."[6]  (R. 4 Ex. 1 at Ex. A; R. 4 Ex. 2 at Ex. A; R. 4 Ex. 3 at Ex. A.)  These Orders were required to become a "Final Order," which was defined by the Settlement Agreements as an order from which no appeal was taken or an order "affirmed by the highest court to which such order was appealed or certiorari has been denied and the time to take any further appeal or petition for certiorari shall have expired."  (R. 4 Ex. 1 at § 1; R. 4 Ex. 2 at § 1; R. 4 Ex. 3 at § 1.)  The second condition precedent required, for the Statutory Direct Action and Common Law Direct Action Settlement Agreements, the execution and delivery into escrow of a specified number of general releases from claimants, and, for

---

on Appeal, <u>In re Johns-Manville Corp.</u>, No. 11 Civ. 1329 (S.D.N.Y. Feb. 17, 2011), ECF No. 3.)

[6] The exact injunctive language set forth in Exhibit A to the Common Law Direct Action Settlement Agreement and the Hawaii Direct Action Settlement Agreement differs slightly, but not in any material respect.  (R. 4 Ex. 2 at Ex. A; R. 4 Ex. 3 at Ex. A.)

the Hawaii Direct Action Settlement Agreement, the dismissals
with prejudice of pending claims against Travelers. (R. 4 Ex. 1
at § 2(c); R. 4 Ex. 2 at § 2(d); R. 4 Ex. 3 at § 2(c).)

The Settlement Agreements made clear that "the non-
occurrence or failure to satisfy any of the conditions precedent
. . . shall relieve Travelers from any obligation whatsoever
under th[e] Settlement Agreement[s], including, but not limited
to, the obligation to pay any portion of the Settlement
Amount[s] . . . ." (R. 4 Ex. 1 at § 3(c); R. 4 Ex. 2 at § 2; R.
4 Ex. 3 at § 3(c).)

The Settlement Agreements provided that they were governed
by New York law. (R. 4 Ex. 1 at § 18; R. 4 Ex. 2 at § 17; R. 4
Ex. 3 at § 18.)

## II.

### A.

In 2004, the parties filed separate motions seeking the
Bankruptcy Court's approval of the Settlement Agreements.
Various parties filed objections, including Chubb Indemnity
Insurance Company ("Chubb"), a sophisticated insurer with
asbestos-related insurance policies, which risked having
potential future contribution and indemnity claims against
Travelers barred by the Clarifying Order. Manville II, 340 B.R.

at 68.  Chubb and the other objecting parties argued that the
Bankruptcy Court lacked subject matter jurisdiction to enjoin
such claims.  Id. at 67-68.  Chubb also independently objected
on due process grounds, contending that it did not receive
constitutionally sufficient notice of the 1986 Orders.  Id. at
68-69.

Following an evidentiary hearing, the Bankruptcy Court
entered an Order approving all three Settlement Agreements and
clarifying that the 1986 Orders barred pending Direct Actions
and "[t]he commencement or prosecution of all actions and
proceedings against Travelers that directly or indirectly are
based upon, arise out of or relate to Travelers['] insurance
relationship with Manville or Travelers['] knowledge or alleged
knowledge concerning the hazards of asbestos[,]" including "any
claims for contribution or indemnity relating in any way to the
foregoing . . . ."  (R. 2 at ¶ 7) ("the Clarifying Order").[7]  The
language in the Clarifying Order was substantially the same as
the language contained in the Exhibit As annexed to the
respective Settlement Agreements.  The Bankruptcy Court also

_____

[7] While the Settlement Agreements referred to two separate Orders
— a Settlement Approval Order and a Clarifying Order — the
Bankruptcy Court issued one Order intended to accomplish both
objectives.  No party argues that this consolidation of the two
Orders resulted in a failure of the conditions precedent in the
Settlement Agreements.

issued Findings of Fact and Conclusions of Law setting forth the basis for the Clarifying Order.  Manville I, 2004 WL 1876046. The Bankruptcy Court concluded that it had the constitutional and statutory authority to enter both the Clarifying Order and the 1986 Orders.  Id. at *26-28, ¶¶ 1-9.  The court also found that the Direct Action Suits and all contribution or indemnity claims by other insurers were barred by the terms of the 1986 Orders.  Id. at *30-34, ¶¶ 17-35.  In addition, the Bankruptcy Court rejected the objections of Chubb and the other insurers to the Settlement Agreements, reasoning that the judgment reduction provisions of the Clarifying Order, which provided mechanisms to reduce potential judgments obtained in Direct Action Suits against objecting insurers, protected "the interests of non-settling defendants in the direct action claims so completely as to render their objections to the settlements moot."  Id. at *34, ¶¶ 36-38.  The Bankruptcy Court thus approved all three Settlement Agreements in their entirety.

Various parties that had objected to the Settlement Agreements, including Chubb, appealed the Clarifying Order and the Bankruptcy Court's Findings of Fact and Conclusions of Law. This Court affirmed the Bankruptcy Court's orders in all

material respects.[8]  Manville II, 340 B.R. 49.  First, the Court
concluded that the Bankruptcy Court had constitutional and
statutory authority to enter the Clarifying Order, reasoning
that the Bankruptcy Court had jurisdiction to enter the 1986
Orders and that the Clarifying Order was a proper exercise of
the Bankruptcy Court's jurisdiction to interpret and enforce
these prior Orders.  Id. at 59-67.  Second, the Court rejected
Chubb's argument that it was not bound by the 1986 Orders or the
Clarifying Order on due process grounds.  Id. at 68-69.  The
Court reasoned that the publication notice issued by the
Bankruptcy Court in 1984 was sufficient to put Chubb, a
sophisticated insurer, on notice with respect to whatever
asbestos-related claims it may have had against Travelers and
the other settling insurers.  Id. at 68.  The Court also noted
an exception to due process concerns like those raised by Chubb
"where a special remedial scheme exists expressly foreclosing
successive litigation by nonlitigants, as for example in

---

[8]  This Court reversed the portion of the Clarifying Order with
respect to the Settlement Agreements' "gate-keeping" provision,
which required plaintiffs bringing asbestos-related direct
action claims against Travelers to seek the Bankruptcy Court's
approval before proceeding.  The Court concluded that the
Bankruptcy Court did not have jurisdiction to approve this
provision.  Manville II, 340 B.R. at 65-67.

bankruptcy or probate." Id. (quoting Ortiz v. Fibreboard Corp., 527 U.S. 815, 846 (1999)).

The Court of Appeals for the Second Circuit reversed this Court's Order. In re Johns-Manville Corp. ("Manville III"), 517 F.3d 52 (2d Cir. 2008). The Court of Appeals concluded that the 1986 Orders, as interpreted by the Bankruptcy Court in 2004, were not a proper exercise of the Bankruptcy Court's jurisdiction, because they purported to "enjoin claims against Travelers that were predicated, as a matter of state law, on Travelers' own alleged misconduct and were unrelated to Manville's insurance policy proceeds and the res of the Manville estate." Id. at 68. Thus, the Court of Appeals concluded, the Clarifying Order was jurisdictionally improper because, while the Bankruptcy Court had jurisdiction to clarify its prior orders, "that clarification cannot be used as a predicate to enjoin claims over which it had no jurisdiction." Id. at 60-61. With respect to Chubb, the Court of Appeals concluded that it was unnecessary to reach Chubb's due process objections, because the case was being decided on other grounds. Id. at 60 n.17.

The Supreme Court granted certiorari and reversed the judgment of the Court of Appeals. Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195 (2009). The Supreme Court made clear that the Direct Action Suits were, and always had been, barred

against Travelers by the terms of the 1986 Orders.  Id. at 2203-04.  The Supreme Court concluded that the Court of Appeals had erred in reevaluating the Bankruptcy Court's jurisdiction to enter these 1986 Orders, explaining that "the 1986 Orders became final on direct review over two decades ago" and "whether the Bankruptcy Court had jurisdiction and authority to enter the injunction in 1986 was not properly before the Court of Appeals in 2008 and is not properly before us."  Id. at 2203.  With respect to the Clarifying Order, the Court also concluded that this Order was a proper exercise of the Bankruptcy Court's jurisdiction.  The Supreme Court reasoned that the Clarifying Order did not expand the scope of the 1986 Orders but merely interpreted and enforced them, an action well within the Bankruptcy Court's jurisdiction.  Id. at 2203-05.

The Supreme Court, however, refrained from deciding "whether any particular respondent [was] bound by the 1986 Orders."  Id. at 2207.  Noting that the Court of Appeals in Manville III had not reached Chubb's due process objection, the Supreme Court remanded to the Court of Appeals for consideration of whether Chubb "was not given constitutionally sufficient notice of the 1986 Orders, so that due process absolves it from following them . . . ."  Id.

13

On remand, the Court of Appeals concluded that Chubb was not bound by the 1986 Orders, or the Clarifying Order's interpretation of those orders, because Chubb was not afforded constitutionally sufficient notice of the 1986 Orders and the proceedings leading up to them.  In re Johns-Manville Corp. ("Manville IV"), 600 F.3d 135, 138, 158 (2d Cir. 2010).  The Court of Appeals held that "both the bankruptcy court and the district court erred in rejecting Chubb's due process argument," id. at 148-49, and thus "reversed as to Chubb" this Court's Order, id. at 138, 159.[9]  The Court of Appeals declined to determine the effect of its holding on the status of the Settlement Agreements, leaving this issue "to the parties, with the aid of the bankruptcy court . . . ."  Id. at 158-59 (citation omitted).

_____

[9] The Court of Appeals also stated that, notwithstanding the Supreme Court's holding that it had been error for the Court of Appeals in Manville III to reevaluate the Bankruptcy Court's jurisdiction to issue the 1986 Orders, Chubb was free to collaterally attack such jurisdiction because it could not constitutionally be bound by the 1986 Orders.  Manville IV, 600 F.3d at 153, 158.  Furthermore, noting that the Supreme Court did not resolve the question of whether the 1986 Orders were jurisdictionally proper, the Court of Appeals concluded that it would adhere to its prior holding in Manville III that the 1986 Orders were jurisdictionally improper.  The Court therefore concluded that Chubb's collateral attack on the 1986 Orders on these grounds was meritorious.  Id. at 152-53, 158.

14

On August 18, 2010, Travelers filed a petition for writ of certiorari and writ of mandamus before the Supreme Court, which were denied on November 29, 2010.  Travelers Indem. Ins. Co. v. Chubb Indem. Co., 131 S. Ct. 644 (2010).

### B.

In September 2010, counsel for the Statutory and Hawaii Direct Action Plaintiffs and for the Common Law Direct Action Plaintiffs filed separate motions requesting that the Bankruptcy Court compel Travelers to make the payments required under the Settlement Agreements.  (R. 4-5.)  Travelers objected, contending that the conditions precedent to payment under the Settlement Agreements had not been fulfilled.

On December 16, 2010, the Bankruptcy Court issued a Memorandum Decision and Order granting the motions to compel. In re Johns-Manville Corp. ("Manville V"), 440 B.R. 604 (Bankr. S.D.N.Y. 2010).  The Bankruptcy Court concluded that the conditions precedent to payment under the Settlement Agreements had been fulfilled because a Clarifying Order of the required scope had been entered by the Bankruptcy Court in 2004 and had become a "Final Order" when "it was affirmed by the Supreme Court, the court of last resort, in Bailey on June 18, 2009." Id. at 614.  The Bankruptcy Court directed Travelers to

15

"immediately satisfy its payment obligations pursuant to the Settlement Agreements." Id. at 615.

The Bankruptcy Court requested additional briefing on the issue of pre-judgment interest and, on January 20, 2011, issued a Final Judgment against Travelers requiring it to pay over $500 million to the Direct Action Plaintiffs. (R. 30.) This amount included over $65 million in pre-judgment interest, which the Bankruptcy Court calculated from the date Bailey had been decided. (R. 30 at ¶¶ 1-3.) The Bankruptcy Court also denied a motion by Common Law Settlement Counsel seeking to hold Travelers in contempt for failure to make the payments required by the December 16, 2010 Order. (R. 30 at ¶ 5.)

On January 21, 2011, Travelers filed its notice of appeal from the Judgment of the Bankruptcy Court. (R. 46.) On January 24, 2011, Common Law Settlement Counsel filed its notice of appeal from the Bankruptcy Court's denial of its motion to hold Travelers in contempt. (R. 47.)

### III.

This Court reviews the Bankruptcy Court's conclusions of law de novo but accepts its findings of fact unless they are clearly erroneous. See Fed. R. Bankr. P. 8013; In re Halstead Energy Corp., 367 F.3d 110, 114 (2d Cir. 2004). The resolution

16

of this appeal turns on the Bankruptcy Court's interpretation of
the parties' Settlement Agreements — in particular, the
conditions precedent to payment in those agreements — which is a
matter of law subject to de novo review.  See In re Jacom
Computer Servs., Inc., 347 B.R. 2, 6 (S.D.N.Y. 2006) (bankruptcy
court's interpretation of an unambiguous settlement agreement is
a question of law reviewed de novo).


                               IV.

     The Bankruptcy Court found, and the parties do not dispute,
that the Settlement Agreements "were the product of good-faith,
arms-length negotiations, are complete, clear and unambiguous on
their face and must be enforced according to the plain meaning
of their terms."  Manville V, 440 B.R. at 611 (citation
omitted).  Travelers argues, however, that the Bankruptcy Court
erred in concluding that the disputed conditions precedent to
payment under the Settlement Agreements had been satisfied and
that Travelers' payment obligations were therefore triggered.
Travelers contends that unambiguous conditions precedent were
not satisfied and therefore it has no obligation to make its
settlement payments pursuant to the Settlement Agreements.


                               17

**A.**

Travelers first argues that the condition precedent requiring entry of a Clarifying Order "containing prohibitions against Claims at least as broad as those contained in Exhibit A[,]" which Orders were required to "become a Final Order(s)[,]" has not been fulfilled.  (R. 4 Ex. 1 at § 2(a); R. 4 Ex. 2 at § 2(b),(d); R. 4 Ex. 2 at § 2(a).)  The Bankruptcy Court held that this condition was satisfied because the Clarifying Order both (1) contained the "broad injunctive language" required by the condition precedent, and (2) had become a "Final Order."  Manville V, 440 B.R. at 614.  This conclusion is incorrect because it ignores the plain scope of the Clarifying Order that survived after the limitation by the Court of Appeals in Manville IV.

1.

The Bankruptcy Court erred in concluding that the required breadth of the Clarifying Order was obtained.  The condition precedent required that the Clarifying Order "contain[] prohibitions against claims at least as broad as those contained in Exhibit A."  (R. 4 Ex. 1 at § 2(a); R. 4 Ex. 2 at § 2(b),(d); R. 4 Ex. 3 at § 2(a).)  Exhibit A specified, among other prohibitions, that "all claims, demands, actions or proceedings against Travelers of any kind or nature whatsoever"

18

"arising from or relating to" Travelers' handling of asbestos
claims, including "any claims for contribution or indemnity,"
were "permanently enjoined as against Travelers, which were
released therefrom under [the 1986 Orders]." (R. 4, Ex. 1 at
Ex. A; R. 4 Ex. 2 at Ex. A; R. 4 Ex. 3 at Ex. A.)  While it is
true that the Clarifying Order, as originally entered by the
Bankruptcy Court in 2004, incorporated the substance of this
language, that Order never became a Final Order.  Instead, in
Manville IV, the Court of Appeals held that Chubb was not bound
by the Clarifying Order or the 1986 Orders, with the result that
Chubb remains free to bring contribution and indemnity claims
against Travelers.  Manville IV, 600 F.3d at 158.  Thus, after
Manville IV, the Clarifying Order did not "contain prohibitions
against Claims at least as broad as those contained in Exhibit
A," because contribution and indemnity claims were not barred as
to Chubb and potentially other insurers who did not receive
constitutionally sufficient notice of the 1986 Orders.

    The Bankruptcy Court rejected this reasoning, concluding
that the required breadth of the Clarifying Order had been
obtained because (1) the Clarifying Order adopted the required
language in Exhibit A, and (2) the Supreme Court held that the
Direct Action Suits were barred by the Clarifying Order and the
1986 Orders.  Manville V, 440 B.R. at 612-13.  The Bankruptcy

19

Court acknowledged that, after Manville IV, the Clarifying Order does not "enjoin all parties, including those who failed to receive sufficient notice such as Chubb," but rejected Travelers' argument that this fact rendered the condition precedent unsatisfied.  Id. at 613.

    In reaching this conclusion, the court reasoned that the injunctive language for which the parties bargained must be read to require only that the "claims of those parties originally bound by the 1986 Orders" be enjoined.  Id.  Because Manville IV held that Chubb was not bound by the 1986 Orders, the Bankruptcy Court reasoned, the Settlement Agreements did not require that claims by Chubb be enjoined.  Id.  However, the Bankruptcy Court's reasoning in this respect is based on the mistaken premise that the "only legally permissible reading" of the scope of the Clarifying Order is that it was meant to enjoin only the claims of those parties deemed to be bound by the 1986 Orders. Id. at 613.  The Bankruptcy Court believed that a contrary reading, like Travelers', "would require this Court to enter an order clarifying that all Direct Action claims were enjoined by the 1986 Orders, regardless of whether the parties bringing these claims received constitutionally sufficient notice of the 1986 Orders."  Id.  Such a reading was impermissible, the court concluded, because "[a]n agreement which violates a provision of

the constitution is illegal and void" and "the law will not presume that the parties intended to make an illegal contract." Id. (citations omitted) (alteration in original).

This reasoning is flawed, however, because it assumes that Travelers' reading of the Settlement Agreements would require the Court to enter an order enjoining claims by Chubb in contravention of Manville IV's holding that Chubb cannot constitutionally be bound by the 1986 Orders. This is not the case. To the contrary, Travelers urges that, precisely because of Manville IV's holding that the Clarifying Order cannot constitutionally be enforced against Chubb, the conditions precedent in the Settlement Agreements are not satisfied and the Settlement Agreements should not be enforced. Such a reading of the Settlement Agreements does not require any party to act illegally. Instead, it ensures that, if the satisfaction of a condition precedent would be unlawful, or indeed could not be satisfied for any reason, then the Settlement Agreements cannot be enforced. The Bankruptcy Court's reading would instead conclude that, if some condition in the Settlement Agreements were deemed illegal, the parties would be forced to proceed with less than they bargained for, rather than simply being released from the agreements. This reading cannot be squared with well-established principles of New York contract law that require

21

strict compliance with conditions precedent before an obligation to perform a contract arises.  See, e.g., MHR Capital Partners LP v. Presstek, Inc., 912 N.E.2d 43, 47 (N.Y. 2009) ("Express conditions must be literally performed; substantial performance will not suffice."); IDT Corp. v. Tyco Grp., S.A.R.L., 918 N.E.2d 913, 916-17 (N.Y. 2009); Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co., 660 N.E.2d 415, 418-19 (N.Y. 1995).

Thus, there is nothing illegal or impermissible about reading the Settlement Agreements according to their plain terms, to require that the Clarifying Order bar "all claims, demands, actions or proceedings against Travelers of any kind or nature whatsoever," relating to Travelers' handling of asbestos claims, including "any claims for contribution or indemnity." (R. 4 Ex. 1 at Ex. A; R. 4 Ex. 2 at Ex. A; R. 4 Ex. 3 at Ex. A.) The fact that this requirement could not be satisfied because Chubb could not constitutionally be bound by the Clarifying Order did not require the Bankruptcy Court to enforce an illegal contract; instead, the parties should simply have been released from their obligations under the contract.  The Bankruptcy Court therefore erred in concluding that the required scope of the Clarifying Order had been obtained despite the fact that contribution and indemnity claims by Chubb were not enjoined.

Instead, because the Clarifying Order, after <u>Manville IV</u>, did not bar contribution and indemnity claims by Chubb and potentially other insurers, it did not "contain prohibitions against claims at least as broad as those contained in Exhibit A." Accordingly, the required scope of the Clarifying Order was not obtained.

2.

The Bankruptcy Court also erred in concluding that the Clarifying Order became a "Final Order" as required by the Settlement Agreements. The Settlement Agreements defined a "Final Order" as an order that was not appealed or was "affirmed by the highest court to which such order was appealed or certiorari has been denied and the time to take any further appeal or petition for certiorari shall have expired." (R. 4 Ex. 1 at § 1; R. 4 Ex. 2 at § 1; R. 4 Ex. 3 at § 1.) The Clarifying Order was never affirmed by the highest court to which it was appealed. Although the Supreme Court did conclude that the Bankruptcy Court had jurisdiction to enter both the 1986 Orders and the Clarifying Order, and that the Direct Action Suits were barred by these Orders, the Supreme Court remanded the case to the Court of Appeals to consider the question of whether Chubb was bound by the 1986 Orders. On remand, the Court of Appeals held that Chubb was not bound and that "both

23

the bankruptcy court and the district court erred in rejecting Chubb's due process argument." Manville IV, 600 F.3d at 138, 148-49, 158.  The Court of Appeals thus "reversed as to Chubb" this Court's order.  Id. at 138, 159.  Thus, the Clarifying Order was not "affirmed by the highest court to which [it] was appealed," but rather was explicitly "reversed as to Chubb" by the Court of Appeals.  Id.  Consequently, it did not become a "Final Order" as defined by the plain terms of the Settlement Agreements.

The Bankruptcy Court reached a contrary conclusion by reasoning that "the fact that the Second Circuit [] held that Chubb did not receive adequate notice of the 1986 Orders and is therefore not bound by its terms does not affect the finality of the 2004 Clarifying Order."  Manville V, 440 B.R. at 614 (internal quotation marks and citation omitted).  The Bankruptcy Court reasoned that the Clarifying Order became final when "it was affirmed by the Supreme Court, the court of last resort, in Bailey on June 18, 2009[,]" given that "the only issue that was pending before the Supreme Court, whether Chubb was bound by the 1986 Orders on due process grounds, has no impact on whether the 2004 Clarifying Order is a Final Order."  Id. at 614.

The Bankruptcy Court's conclusion that Manville IV's holding with respect to Chubb was irrelevant to the finality of

24

the Clarifying Order is incorrect because it is premised on the court's erroneous prior reasoning that the Clarifying Order was only required to enjoin the claims of those parties deemed to be bound by the 1986 Orders.  However, because the Settlement Agreements instead required that the Clarifying Order bar "all claims, demands, actions or proceedings against Travelers of any kind whatsoever" relating to Travelers' handling of asbestos claims, including claims for contribution and indemnity, Manville IV's holding that the Clarifying Order did not enjoin claims by Chubb resulted in a Clarifying Order with a narrower scope than that required by the Settlement Agreements.  (R. 4 Ex. 1 at Ex. A; R. 4 Ex. 2 at Ex. A; R. 4 Ex. 3 at Ex. A.)  As a result, a Clarifying Order of the required scope never became a Final Order.

In concluding that the Clarifying Order had become a Final Order, the Bankruptcy Court also relied on equitable considerations, noting its concern that Travelers would be "getting something for nothing" if it were not required to fulfill its payment obligations under the Settlement Agreements. Manville V, 440 B.R. at 614.  The Bankruptcy Court reasoned that Travelers had "received everything that it bargained for" because the Supreme Court in Bailey affirmed the Settlement Agreements and "barred parties from bringing suit against

Travelers based on the plain language of the 1986 Orders." Id.
at 614-15.  Thus, the court concluded, Travelers should not be
permitted to "walk away with precisely the injunction it
bargained for without paying the asbestos victims the
compensation that they are duly entitled to pursuant to the
Settlements." Id. at 615.

However, it is plain that Travelers did not "walk away with
precisely the injunction it bargained for," as the Bankruptcy
Court concluded.  As discussed above, Travelers bargained for a
Clarifying Order of a specific scope, namely one that enjoined
"all claims, demands, actions or proceedings against Travelers
of any kind whatsoever," relating to Travelers' handling of
asbestos claims, including claims for contribution and
indemnity.  (R. 4 Ex. 1 at Ex. A; R. 4 Ex. 2 at Ex. A; R. 4 Ex.
3 at Ex. A.)  After Manville IV, the Clarifying Order was no
longer of the same scope because it exposed Travelers to
contribution and indemnity claims from Chubb and potentially
other insurers.  This is less protection than that for which
Travelers bargained and for which it was willing to pay nearly
$500 million.

The Bankruptcy Court was correct that the Supreme Court's
decision in Bailey benefited Travelers by providing protection
against Direct Action Suits, which the Supreme Court held were

26

barred by the terms of the 1986 Orders.  <u>Bailey</u>, 129 S. Ct. at
2203-04.  However, it is not the case that Travelers received
this protection "for nothing," as the Bankruptcy Court
concluded.  To the contrary, the Supreme Court held that these
Direct Action Suits were and always had been enjoined by the
1986 Orders, injunctions that Travelers had already paid nearly
$80 million to obtain in 1986.  <u>Id.</u>  Thus, the Bankruptcy
Court's decision would also skew the equities by requiring
Travelers to pay over $500 million for relief to which it was
already entitled under the 1986 Orders and for which it had
already paid in 1986.  While Travelers was willing to pay the
additional $500 million to obtain complete peace through a
clarification that any and all claims against it related to its
handling of asbestos claims were enjoined, including
contribution and indemnity claims by all potential insurers,
this is not the relief Travelers obtained following <u>Manville IV</u>.

     Moreover, there is nothing unfair about not requiring
Travelers to make the payments under the Settlement Agreements
if it is not contractually bound to do so.  To the extent the
Bankruptcy Court invoked "its equitable powers to ensure that
substantial justice is achieved" in an effort to ameliorate the
effect of the conditions precedent, <u>Manville V</u>, 440 B.R. at 614,
New York law is clear that subjective notions of fairness or

equity are not a permissible basis for a court to rewrite a
contract or to excuse compliance with conditions precedent.
See, e.g., Law Debenture Trust Co. of N.Y. v. Maverick Tube
Corp., 595 F.3d 458, 468 (2d Cir. 2010) ("If the agreement on
its face is reasonably susceptible of only one meaning, a court
is not free to alter the contract to reflect its personal
notions of fairness and equity." (citations and alteration
omitted)); Oppenheimer, 660 N.E.2d at 418 ("Since an express
condition . . . depends for its validity on the manifested
intention of the parties, it has the same sanctity as the
promise itself.  Though the court may regret the harshness of
such a condition . . . it must, nevertheless, generally enforce
the will of the parties unless to do so will violate public
policy." (citation omitted)).  Because the conditions precedent
to payment were not satisfied here, there is no legal basis to
require Travelers to perform its obligations under the
Settlement Agreements.

Thus, the Bankruptcy Court erred in concluding that a
Clarifying Order of the required scope became a Final Order and
that Travelers was required to make its payments under the
Settlement Agreements.

28

**B.**

Travelers also argues that the second condition precedent
of the Settlement Agreements was not satisfied.  Specifically,
Travelers contends that there is nothing in the record
demonstrating that Hawaii Settlement Counsel satisfied the
requirement that all named plaintiffs have dismissed with
prejudice all claims against Travelers (R. 4 Ex. 2 at § 2(d)),
or that Common Law Settlement Counsel satisfied the requirement
that at least 14,000 general releases be executed and delivered
into escrow (R. 4 Ex. 3 at § 2(c)).  However, because Travelers'
payment obligations were not triggered in any event because the
Clarifying Order did not become a Final Order, the Court need
not reach this issue.

**V.**

Travelers also contends that the Bankruptcy Court erred in
granting prejudgment interest calculated from the date of the
Supreme Court's decision in <u>Bailey</u>, rather than, at the very
earliest, from the date the Supreme Court denied Travelers'
petitions for mandamus and certiorari to review the Court of
Appeals' decision in <u>Manville IV</u>.  However, because the
Bankruptcy Court erred in entering Judgment in favor of the
appellees, it is unnecessary to reach the question of the amount

of prejudgment interest that should have been awarded as part of
this Judgment.


                                 **VI.**

     Common Law Settlement Counsel also appeals the Bankruptcy
Court's denial of its contempt motion against Travelers.  (R. 30
at ¶ 5.)  The Bankruptcy Court's ruling on a contempt motion is
reviewed for abuse of discretion.  Latino Officers Ass'n City of
New York, Inc. v. City of New York, 558 F.3d 159, 164 (2d Cir.
2009).

     Common Law Settlement Counsel contends that the Bankruptcy
Court abused its discretion in declining to hold Travelers in
contempt for Travelers' alleged failure to comply with the
Bankruptcy Court's Order of December 16, 2010 ("December 16
Order") requiring Travelers to "immediately satisfy its payment
obligations pursuant to the Settlement Agreements."  Manville V,
440 B.R. at 615.  Common Law Settlement Counsel contends that,
because Travelers did not immediately make payments into the
Common Law Settlement Fund following the December 16 Order, it
violated the terms of that Order and should have been held in
contempt by the Bankruptcy Court.

     However, the day after the December 16 Order was issued,
Travelers sought an emergency stay under Federal Rule of

                                  30

Bankruptcy Procedure 8005 and offered to post a bond pending
appeal.  (R. 17.)  On January 20, 2011, the Bankruptcy Court
entered Final Judgment and stayed enforcement of the judgment
pending appellate review.  (R. 30 at ¶ 4.)  Common Law
Settlement Counsel does not contend that the Bankruptcy Court
erred in granting this stay.

    "A party may not be held in contempt unless the order
violated by the contemnor is clear and unambiguous, the proof of
non-compliance is clear and convincing, and the contemnor was
not reasonably diligent in attempting to comply."  EEOC v. Local
638, 81 F.3d 1162, 1171 (2d Cir. 1996) (internal quotation marks
and citation omitted).  A contempt order is a "potent weapon to
which courts should not resort where there is a fair ground of
doubt as to the wrongfulness of the defendant's conduct."  King
v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)
(internal quotation marks and citations omitted).  It is plain
that, by seeking a stay and agreeing to post a bond, Travelers
did not ignore or disregard the December 16 Order but instead
made a reasonably diligent effort to comply with it.  See Cohen
v. Metro Life Ins. Co., 334 F. App'x 375, 378 (2d Cir. 2009)
(summary order) (defendant "diligently attempted to comply with
[order in question] by moving to post a supersedeas bond rather
than paying [the plaintiff] benefits pending appeal"); Town of

Islip v. E. Air Lines, Inc., 793 F.2d 79, 85 (2d Cir. 1986)
(vacating a judgment of contempt in part because the defendant
"immediately moved for a stay and/or clarification" of the
court's order).  Thus, the Bankruptcy Court's denial of Common
Law Settlement Counsel's contempt motion was not an abuse of
discretion.


                          CONCLUSION

     The Court has considered all of the arguments of the
parties.  To the extent not specifically addressed above, the
remaining arguments are either moot or without merit.  For the
reasons explained above, the judgment of the Bankruptcy Court is
**affirmed in part and reversed in part**.  The Clerk is directed to
close this case and to close any open motions.

SO ORDERED.

Dated:   New York, New York
         February 29, 2012

                              John G. Koeltl
                         United States District Judge

32